## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FIRST CHOICE BANK, as Guardian ad Litem, )
of the Estate of Hannieh Johnson, a disabled )
minor, )
        Plaintiff, )
         )
         )
     vs. )
         )
HEALTH PROFESSIONALS, LTD., )
JEFFREY BARGAR, DEBORAH GOSS- )
JOHNSON, MARGARITA MENDOZA, )
ARIEL IRBAN-ALACALAY, RON MCLIN, )
SHARON A. PARKER, WILLIE BAILEY and )
L. PEPPER, TINA MATTERA, MD and )
JOHN REDWINSKI, )
         )
        Defendants. )

No. FILED: SEPTEMBER 3, 2008
08CV5017
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE DENLOW

CH

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS

## <u>COMPLAINT</u>

First Choice Bank,  Guardian ad Litem of the Estate of Hannieh Johnson, a disabled

minor, complains of the defendants as follows:

## <u>PARTIES</u>

1.    First Choice Bank of Geneva ("FCB") is a banking institution with a regular place of

business within the judicial district in Geneva, Kane County, Illinois.  FCB has been

duly appointed Guardian ad Litem of the Estate of Hannieh Johnson, a disabled

-1-

minor, by order of the Sixteenth Judicial Circuit, DeKalb County, Illinois.  A copy of this Order is attached as Exhibit 1.

2.    Hannieh Johnson ("Hannieh") is a seventeen year-old girl who was born on August 12, 1992.  She is currently a patient at Alden Village, a rehabilitation and health care center located within the judicial district in Bloomingdale, DuPage County, Illinois. Hannieh has severe and irreversible brain damage as the result of a hypoxic insult suffered on March 14, 2007.

3.    At all relevant times, the Illinois Youth Center - Warrenville ("IYCW") was a facility operated by the Illinois Department of Corrections located within the judicial district in Warrenville, Illinois.   IYCW was and is a youth detention facility which houses approximately 78 minor females.

4.    At all relevant times and on information and belief, Health Professionals, Ltd. ("HPL") provided managed health and mental health care services to the detainees and inmates at IYCW pursuant to an agreement with the Illinois Department of Corrections ("IDOC").  HPL had and has a regular place of business at 900 N. Lindbergh Drive, Peoria, Peoria County, Illinois.

5.    At all relevant times, Jeffrey Bargar ("Mr. Bargar") was the Superintendent of IYCW. Mr. Bargar is sued in his official and individual capacity.

6. At all relevant times, Deborah Goss Johnson ("Ms. Johnson") was a therapist at IYCW. Ms. Johnson is sued in her individual capacity.

7. At all relevant times, Margarita Mendoza, ("Ms. Mendoza") was a licensed social worker and Assistant Superintendent of Programs at IYCW. Ms. Mendoza is sued in her individual capacity.

8. At all relevant times, Ariel Irban-Alacalay ("Mr. Alacalay") was a youth supervisor at IYCW. Mr. Alacalay is sued in his individual capacity.

9. At all relevant times, Ron McLin ("Mr. McLin") was a youth supervisor at IYCW. Mr. McLin is sued in his individual capacity.

10. At all relevant times, Sharon A. Parker ("Ms. Parker") was a substance abuse counselor at IYCW. Ms. Parker is sued in her individual capacity.

11. At all relevant times, Willie Bailey ("Mr. Bailey") was a shift supervisor at IYCW. Mr. Bailey is sued in his individual capacity.

12. At all relevant times, L. Pepper, ("Ms. Pepper") was a licensed social worker at IYCW. Ms. Pepper is sued in her individual capacity.

13.    At all relevant times, John Redwinski ("Mr. Redwinski") was a shift supervisor and C/D Wing Officer at IYCW. Mr. Redwinski is sued in his individual capacity.

14.    At all times relevant, Tina Mattera, MD ("Dr. Mattera") is a physician licensed to practice medicine in Illinois. Dr. Mattera is a psychiatrist who practices within the judicial district. At all times relevant to the allegations of this complaint, Dr. Mattera was employed by or the agent of either HPL and/or IYCW or IDOC. If and to the extent that Dr. Mattera was an employee or agent of IYCW and/or IDOC during her treatment of Hannieh, she was a state actor and she is sued in her individual capacity.

15.    At all times relevant to the events which give rise to this complaint, Mr. Bargar, Ms. Johnson, Ms. Mendoza, Mr. Alacalay, Mr. McLin, Ms. Parker, Mr. Bailey, Mr. Redwinski, and Ms. Pepper were state actors.

**JURISDICTION**

16.    Jurisdiction in this Court is proper pursuant to 28 USC §§1343(a)(3) and 1331 and the doctrine of pendant jurisdiction.

## ALLEGATIONS COMMON TO ALL COUNTS

17.   On December 18, 2006, Hannieh became an inmate at IYCW.  She had a history of prior psychological treatment including hospitalizations for suicidal ideation, reactive attachment disorder, and bipolar disorder.

18.   After Hannieh's confinement to IYCW, her mental condition deteriorated and on February 9, 2007, she was prescribed psychotropic medication.

19.   Between February 9, 2007 and March 11, 2007, Hannieh displayed an increasing tendency towards self-harm and mental instability and  was placed on a ten-minute close supervision watch on March 11, 2007 after she stated that she was going to kill herself.

20.   On March 13, 2007 at approximately 3:55 p.m., Ms. Johnson removed Hannieh from the ten-minute close watch because she and other employees and/or agents of HPL and/or IYCW,  IDOC, or both, determined that Hannieh was stable and no longer a threat to herself.

21.   On March 14, 2007, Hannieh exchanged words with Ms. Parker after a confrontation with another inmate, and Ms. Parker returned Hannieh to her cell as punishment for the confrontation.

22.     On March 14, 2007 sometime after 10:00 p.m. and before 11:00 p.m., Hannieh unsuccessfully attempted suicide in her room at IYCW by hanging herself with a sheet from her bunk attached to the wall of her cell.

23.     For some time prior to March of 2007, there was at least one nurse on duty at IYCW during the nighttime hours whose duties included the monitoring of the health and welfare of the inmates of IYCW.

24.     On information and belief, the night nurse went on medical leave approximately two weeks prior to March 14, 2007, and no or inadequate provisions had been made for a replacement nurse.  As a result, there was no medical professional present at IYCW during the nighttime hours on March 14, 2007.

25.     On March 14, 2007, IYCW had at least one automatic external defibrillator ("AED") on the premises for use in an emergency.

26.     When Hannieh was found hanging in her cell, she was taken down and Messrs. Alacalay and McLin began CPR.

27.     At some point after CPR was begun, it was stopped either to attempt to locate or in anticipation of the arrival of the AED.

28.    The AED never arrived either because it could not be located or because no one had access to the part of the facility where it was stored.

## COUNT I
**(FCB v. Bargar, Johnson, Mendoza, Alacalay, McLin, Parker, Bailey, Redwinski, Pepper, and Dr. Mattera    42 USC §1983–inadequate medical care)**

29.    FCB realleges and reasserts paragraphs 1 through 28 of this complaint as if fully set forth herein.

30.    The individual and joint conduct of Mr. Bargar, Mr. Johnson, Ms. Mendoza, Mr. Alacalay, Mr. McLin, Ms. Parker, Ms. Pepper, Mr. Bailey, Mr. Redwinski, and Dr. Mattera violated Hannieh's settled and established right to adequate medical care under the Fourth and/or Eighth and/or Fourteenth Amendments to the Constitution of the United States.  This conduct included, without limitation, removing Hannieh from the ten-minute close watch without adequate alternative supervision when she needed such alternative supervision, failing to properly monitor Hannieh and to deliver to her the medical and mental health care and treatment she required, confining Hannieh to a cell alone without supervision on March 14, 2007, failing to recognize and adequately address Hannieh's mental health needs on and prior to March 14, 2007, failing to properly conduct CPR once Hannieh's suicide attempt was discovered, failing to locate and/or have access to an AED on March 14, 2007, failing to adequately staff the night nurse position on March 14, 2007, and other failures.

31.  As a direct and proximate result of the individual or combined conduct of Mr. Bargar, Mr. Johnson, Ms. Mendoza, Mr. Alacalay, Mr. McLin, Ms. Parker, Ms. Pepper, Mr. Bailey, Mr. Redwinski, and Dr. Mattera's conduct, Hannieh suffered severe and permanent injuries necessitating care and continuing treatment for Hannieh's severe brain injury which has curtailed, diminished, and eliminated her ability to earn a living, caused her pain, suffering, disability, disfigurement, and emotional distress and destroyed her ability to enjoy and pursue a normal life.  Her injuries are continuing and permanent.  These injuries resulted in deprivation of rights, privileges and immunities secured for Hannieh within the meaning of the 5th and 14th Amendments to the Constitution of the United States, Article 1 Section 2 of the Constitution of the State of Illinois, and 42 U.S.C. Section 1983.

WHEREFORE, FCB prays that judgment be entered on its behalf and against Mr. Bargar, Mr. Johnson, Ms. Mendoza, Mr. Alacalay, Mr. McLin, Ms. Parker, Ms. Pepper, Mr. Bailey, Mr. Redwinski, and Dr. Mattera as follows:

a.  compensatory damages in a sum to be determined by a trier of fact in excess of $75,000;

b.  exemplary damages in a sum to be determined by a trier of fact;

c.  attorney's fees and costs as provided by 42 USC §1983 and other relevant rules and statutes; and

d.  such other and further relief as this Court deems meet and just.

**COUNT II**
**(Negligence v. Dr. Mattera)**

32.    FCB adopts and realleges paragraphs 1 through 28 of this complaint as if fully set forth herein.

33.    Plaintiff, through counsel, has obtained the consultation contemplated by 735 ILCS 5/2-622(1).  A true and complete copy of counsel's affidavit is attached as Exhibit 1.

34.    At all relevant times, Dr. Mattera owed a duty to Hannieh to exercise ordinary care in diagnosing, treating and caring for her physical and psychological well being.

35.    Dr. Mattera breached her aforesaid duty in one or more of the following ways:

    a.    she failed to properly assess and diagnose Hannieh's medical condition;

    b.    she failed to provide adequate and appropriate care and treatment to Hannieh;

    c.    she failed to properly staff the medical staff at IYCW, including but not limited to night time staffing, so that adequate care and treatment could be delivered to the residents of IYCW including Hannieh;

    d.    she failed to properly monitor Hannieh's mental health during her stay at IYCW and properly respond to her escalating instability and her refusal to take her medication;

e.    she failed to store the AED or AEDs in locations which were known to IYCW staff and accessible at all times of the day and night; and

f.    she was otherwise careless and negligent.

36.    As a direct and proximate result of Dr. Mattera's conduct, Hannieh suffered severe and permanent injuries necessitating care and continuing treatment for Hannieh's severe brain injury which has curtailed, diminished, and eliminated her ability to earn a living, caused her pain, suffering, disability, disfigurement, and emotional distress and destroyed her ability to enjoy and pursue a normal life.  Her injuries are continuing and permanent.

WHEREFORE, FCB prays that judgment be entered on its behalf and against Tina Mattera, MD in an amount to be determined by a jury in excess of $75,000 plus costs and such other amounts as the Court permits.

## COUNT III
### (Negligence v. HPL)

37.    FCB adopts and realleges paragraphs 1 through 28 of this complaint as if fully set forth herein.

38.    Plaintiff, through counsel, has obtained the consultation contemplated by 735 ILCS 5/2-622(1).  A true and complete copy of counsel's affidavit is attached as Exhibit 1.

39.  At all relevant times, HPL owed to Hannieh the duty to deliver to her medical and mental health care which met the prevailing standard of care while she was a detainee at IYCW and to assume vicarious liability for the negligence of its employees or agents, including and Dr. Mattera.

40.  Notwithstanding those duties, HPL was negligent as follows:

   a.  its employees and agents failed to properly or adequately assess, diagnose and monitor Hannieh's mental health during her stay at IYCW;

   b.  its employees and agents failed to properly or adequately treat and/or care for Hannieh's mental health during her stay at IYCW;

   c.  it failed to adequately or properly staff the medical office during the overnight hours on March 14-15, 2007;

   d.  it failed to store the facility AED in a location which was:

      i)  accessible to IYCW staff working overnight; and/or

      ii)  known to IYCW staff working overnight so that it could be used in case of an emergency;

   e.  it is vicariously liable for the negligence of its agent/employee, Dr. Mattera as set forth above; and

   f.  it was otherwise negligent.

41.  At all relevant times, HPL owed a duty to Hannieh to exercise ordinary care in diagnosing, treating and caring for her physical and psychological well being.

42.   As a direct and proximate result of HPL's conduct, Hannieh suffered severe and permanent injuries necessitating care and continuing treatment for Hannieh's severe brain injury which has curtailed, diminished, and eliminated her ability to earn a living, caused her pain, suffering, disability, disfigurement, and emotional distress and destroyed her ability to enjoy and pursue a normal life.   Her injuries are continuing and permanent.


WHEREFORE, FCB prays that judgment be entered on its behalf and against Health Professionals, Ltd., in an amount to be determined by a jury in excess of $75,000 plus costs and such other amounts as the Court permits.


Respectfully submitted,


CLANCY LAW OFFICES


By: _____
        Attorneys for Plaintiff


Wendell W. Clancy
Michael W. Clancy
Clancy Law Offices
CLANCY LAW OFFICES
7 South Second Avenue
St. Charles, IL 60174
(630) 584-7666
#0450146

August 14, 2008


Michael Clancy, Esq.
Clancy Law Offices
7 S. Second Avenue
St. Charles, IL 60174

RE:  Hannieh Johnson

Dear Mr. Clancy:

I am a physician licensed to practice in the state of Illinois and am Board-certified in
General Psychiatry.  At your request, I have reviewed the following materials, which you
sent to me:

1.  Medical record of Hannieh Johnson from Illinois Youth Center – Warrenville

2.  Investigational file into Hannieh Johnson's attempted suicide, including
    interviews of staff members

3.  Warrenville Fire Protection District ambulance run sheet relating to Ms. Johnson

Based on the review of these materials, it is my opinion to a reasonable degree of medical
and psychiatric certainty that the care delivered to Hannieh Johnson while she was at the
Illinois Youth Center – Warrenville fell below the standard of care.  These opinions are
outlined below.

First, it is my opinion that the decision to remove Hannieh from close supervision on
March 12, 2007 was below the standard of care at least in part because it was based on an
inadequate evaluation.  Ms. Johnson's medical record indicates that she was a deeply
troubled girl with significant mental health issues.  While at the Illinois Youth Center –
Warrenville, her mental state deteriorated to the point that she threatened suicide and
made suicidal gestures.   She was prescribed a number of medications, including lithium
carbonate, which she often refused to take.  Given the nature of her mental illness, the

failure to properly monitor her lithium blood level and address her treatment refusal contributed to her ultimate suicide.

In addition, it was a deviation from the standard of care for Deborah Goss-Johnson to remove Ms. Johnson from close observation without examination by or consultation with a psychiatrist. Assessment of suicide risk requires specialized training, and in an institutional setting like a detention facility, the standard of care requires that a psychiatrist participate in or approve such a decision.

Secondly, once Ms. Johnson's suicide attempt was found, it appears (based on my review of the materials sent to me) that CPR was started, stopped, and then started again. This is a deviation from the standard of care. In addition, it appears that the facility had an AED but staff on duty either did not know where it was located or did not have access to the device when it was needed. This also constitutes a deviation from the standard of care.

I am informed that the mental health care delivered to detainees at the Illinois Youth Center – Warrenville at the time Ms. Johnson was there was through Health Care Professionals, Ltd. ("HCP"), a private corporation that contracted with the state. It appears that Tina Mattera, M.D. was the psychiatrist responsible for prescribing Ms. Johnson's medications and ultimately was responsible for her psychiatric care. To the extent that HCP was responsible for overseeing the mental health care delivered to detainees, including establishing, administering, or overseeing a system of placing detainees on or off close supervision, I believe HCP and its employees and/or agents deviated from the standard of care as detailed above. In addition, I note that in the records I reviewed, there was information to indicate that the AED was stored or locked in the "medical office" on the night of Ms. Johnson's suicide attempt. To the extent that HCP was responsible for the storage of and/or access to the AED, it was negligent for the reasons set forth above.

It is my conclusion that had Ms. Johnson's mental health care providers complied with the standard of care, her March 14, 2007 suicide attempt, with her ensuing brain injuries and their sequelae, probably could have been prevented. There is no doubt that had Ms. Johnson's mental health care providers complied with the standard of care during the time that they cared for her, the likelihood that she would have attempted suicide on March 14, 2007 and injured herself to the extent that she did would have been substantially reduced.

Sincerely,