IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST CHOICE BANK, as Guardian ad Litem of the Estate of Hannieh Johnson, a disabled minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08 C 5017 |
| HEALTH PROFESSIONALS, LTD., Et Al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Jeffrey Bargar's ("Bargar"), Defendant Deborah Goss-Johnson's ("Goss-Johnson"), Defendant Margarita Mendoza's ("Mendoza"), Defendant Ariel Irban-Alacalay's ("Alacalay"), Defendant Ron McLin's ("McLin"), and Defendant John Redwinski's ("Redwinski") partial motion to dismiss Count I. For the reasons stated below, we grant in part and deny in part the partial motion to dismiss.

## BACKGROUND

Plaintiff First Choice Bank ("FCB"), acting as Guardian ad Litem of the Estate of Hannieh Johnson ("Johnson"), a disabled minor, alleges that Johnson was an

inmate at the Illinois Youth Center-Warrenville ("IYCW"). FCB contends that between February 9, 2007, and March 11, 2007, Johnson displayed an increasing tendency towards self-harm and mental instability. Johnson was allegedly prescribed psychotropic medication and was placed on a ten-minute close supervision watch. On March 13, 2007, Goss-Johnson and other employees at IYCW allegedly determined that Johnson was no longer a threat to herself and removed her from the ten-minute watch. On March 14, 2007, Johnson allegedly got in an argument with another inmate and Defendant Sharon A. Parker ("Parker"), a substance abuse counselor, allegedly sent Johnson to her cell as punishment. Johnson then allegedly attempted suicide by hanging herself with a bed sheet in her cell. FCB alleges that when Johnson was discovered hanging in her room, Alacalay and McLin began CPR and then stopped in order to try and locate an automatic external defibrillator ("AED"). The AED allegedly never arrived because it either could not be located or because no one had access to the part of the facility where it was stored. FCB also claims that for some time prior to March 2007, there was at least one nurse on duty at IYCW during the nighttime hours, whose duties included monitoring the health and welfare of the inmates of IYCW. However, there was allegedly no medical professional present at IYCW during the nighttime hours of March 14, 2007. As a result of the alleged attempted suicide, Johnson allegedly suffered a hypoxic insult which led to severe and irreversible brain damage.

FCB brought the instant action and includes in its amended complaint an inadequate medical care claim under 42 U.S.C. § 1983 ("Section 1983") brought

against Bargar, Goss-Johnson, Mendoza, Alacalay, McLin, Redwinski, Parker, Defendant Willie Bailey ("Bailey"), Defendant L. Pepper ("Pepper"), and Defendant Tina Mattera, M.D. ("Mattera") (Count I), a negligence claim brought against Mattera (Count II), and a negligence claim brought against Defendant Health Professionals, LTD. (Count III). Bargar, Goss-Johnson, Mendoza, Alacalay, McLin, and Redwinski (collectively referred to as "Defendants") now move to dismiss the claims brought against them in Count I of the first amended complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

3

Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "'provide the defendant with at least minimal notice of the claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)), and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

### I. Official Capacity Claim Brought Against Bargar

Defendants argue that Bargar cannot be sued in his official capacity due to the Eleventh Amendment protections. FCB alleges in the amended complaint that it is suing Bargar in his official and individual capacities. (A Compl. Par. 5). FCB

contends that at the time in question, Bargar was the Superintendent of IYCW. (A. Compl. Par. 5). Thus, the official capacity claim brought against Bargar is essentially a claim brought against IYCW. *See Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999)(stating that "[a] claim against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents"). Under the Eleventh Amendment, "states, as sovereigns in our federal system, will not be held amenable to suit in federal court without their consent." *Protestant Memorial Medical Center, Inc. v. Maram*, 471 F.3d 724, 728 n.3 (7th Cir. 2006). FCB in fact concedes that the official capacity claim brought against Bargar is barred under the Eleventh Amendment. (Ans. 12). Therefore, we grant Defendants' motion to dismiss the official capacity claim brought against Bargar in Count I.

II. Personal Involvement

Defendants argue that the individual Defendants cannot be held liable under Section 1983 since they were not personally involved in the alleged misconduct. A defendant can only be found liable under Section 1983 if the "'defendant was personally responsible for the deprivation of a constitutional right.'" *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006)(quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In order for a public official to be deemed personally responsible for the deprivation of a constitutional right by his subordinates the "official 'must know about the conduct and facilitate it, approve it, condone it, or

5

turn a blind eye.'" *Id.* (quoting in part *Gentry*, 65 F.3d at 561).

Defendants contend that FCB has failed to allege any specific facts that indicate that the individual Defendants were personally involved in the alleged misconduct. Defendants argue, for example, that the only allegation in regard to Bargar personally is that Bargar was the Superintendent of IYCW. (A. Compl. Par. 5). However, FCB provides the job titles for the individual Defendants. (A. Compl. Par. 5-14). Such job titles indicate that the individual Defendants could plausibly have been involved in the alleged misconduct, such as the decision to take Johnson off the ten-minute watch, the alleged errors made in staffing decisions at IYCW, and the alleged errors made concerning the placement of the AED. In addition to the job titles of the individual Defendants, FCB also specifically alleged that the "joint conduct" of the individual Defendants resulted in the alleged constitutional deprivations. (A. Compl. Par. 30). FCB has thus presented sufficient facts to plausibly suggest that the individual Defendants could have been involved in the alleged constitutional deprivations. We recognize that the individual Defendants cannot be held liable under Section 1983 merely because they hold certain positions or supervised certain employees involved in the alleged misconduct. *See Burks v. Raemisch*, 2009 WL 305004, at *1 (7th Cir. 2009)(indicating that "[t]he assumption underlying th[e] choice of defendants-that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable-is a bad one"). Also, FCB is not required at the pleadings stage to include all the facts surrounding its claims. *See id.* (stating that "[p]laintiffs need not lard their

6

complaints with facts; the federal system uses notice pleading rather than fact pleading"). We conclude that the allegations at this stage of the pleadings sufficiently plausibly suggest potential personal involvement by all the individual Defendants in the alleged constitutional deprivations. Therefore, at this early juncture, we decline to dismiss the claims brought against the individual Defendants. We emphasize that we are merely at the pleadings stage, and at the summary judgment stage it will be the burden of FCB to point to evidence that specifically ties each of the individual Defendants to the alleged constitutional deprivations.

III. Deliberate Indifference

Defendants argue that the allegations in the amended complaint indicate that they were not deliberately indifferent to Johnson's medical needs. The Eighth Amendment "proscription against cruel and unusual punishment" is violated when prison employees "display 'deliberate indifference to serious medical needs of prisoners.'" *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)(quoting in part *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)). For a deliberate indifference claim, a plaintiff must first show that "his medical condition is 'objectively, sufficiently serious.'" *Id.* (quoting in part *Greeno*, 414 F.3d at 653)(stating that "[a] serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention"). Secondly, for a deliberate indifference claim, the plaintiff must "demonstrate that prison officials acted with a 'sufficiently culpable state of

7

mind.'" *Id.* (quoting in part *Greeno*, 414 F.3d at 653). In order to have a sufficiently culpable state of mind, "[t]he officials must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" *Id.* (quoting in part *Greeno*, 414 F.3d at 653)(stating that "it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk" and that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious'")(quoting in part *Greeno*, 414 F.3d at 653). In the instant action, Defendants do not contest the fact that Johnson suffered from an objectively serious medical condition. Defendants argue that the allegations in the amended complaint show that Defendants did not have a subjectively culpable state of mind.

A. Goss-Johnson and Others Involved in the Ten-Minute Watch Decision

Defendants argue, for example that the only allegation against Goss-Johnson "[i]s that she removed Hannieh from the ten-minute close watch because she and others determined that Hannieh was stable and no longer a threat." (Mot. 5). In regard to Goss-Johnson, Defendants contend that since Goss-Johnson and others determined that Johnson was not a threat to herself, Goss-Johnson and the others could not have subjectively been aware of any risk to Johnson's safety. However, as is explained above, in order to support the subjective component of a deliberate indifference claim, a plaintiff is not required to establish that a defendant

8

intentionally disregarded a prisoner's safety or knew for certain that a prisoner would be harmed. As indicated above, "it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* (quoting in part *Greeno*, 414 F.3d at 653). The mere fact that Goss-Johnson and others made a determination that Johnson was not a threat to her safety does not preclude the possibility that they did not have sufficient justification to make that determination and that they were disregarding a substantial risk of harm to Johnson. Defendants cannot shield themselves from liability simply because they declared that they made a finding that Johnson was not a threat to herself.

Defendants also argue that Goss-Johnson should be free from liability since Johnson was being treated by medical professionals and Goss-Johnson relied on the instructions of medical professionals. However, Defendants' arguments in this regard go beyond the scope of the amended complaint. FCB does not allege that Goss-Johnson and others were acting solely on the instructions of the medical professionals that treated Johnson. It is not apparent, based on the pleadings, what involvement such medical professionals had with the decision to take Johnson off the ten-minute watch. In fact, in *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), which Defendants rely upon for this point, (Mot. 6), the Seventh Circuit was reviewing a summary judgment ruling, not a motion to dismiss, and thus in that case, the district court had the benefit of all the facts and evidence collected during discovery. *Id.* at 1003. In fact, the Seventh Circuit has recently reiterated in a Section 1983 case that it may be necessary to allow the parties to conduct discovery

9

to ascertain all the relevant facts and that "the lack of detail" in a complaint "does not permit dismissal." *Burks*, 2009 WL 305004, at *2. Also, the bases for FCB's Section 1983 claims involve issues such as staffing and the determinations concerning the ten-minute watch. The claims are not solely based on matters that would be purely within the discretion of medical professionals such as the determination of the proper mental health treatment and medication.

Defendants are also improperly seeking to address the merits of the decision by Goss-Johnson and others in their motion to dismiss, but such an argument is premature at this juncture. At the summary judgment stage, Defendants can point to evidence that shows that Goss-Johnson's decision was reasonable and that she was not aware of a substantial risk of harm to Johnson. Thus, at the pleadings stage the allegations are sufficient to allege a deliberate indifference claim against Goss-Johnson.

### B. Emergency Medical Treatment

Defendants argue that there are not allegations in the amended complaint that show that Alacalay and McLin were deliberately indifferent to Johnson's medical needs when they gave her emergency medical treatment. Defendants make the same argument mentioned above that Alacalay and McLin should be immune from liability since Johnson was being treated by medical professionals. For the reasons stated above, such an argument is premature at this juncture. Defendants complain that there are not allegations specifically detailing what Alacalay and McLin did wrong.

However, FCB is not required to present such details at this juncture, prior to its ability to conduct discovery. FCB alleges that there was deliberate indifference in regard to the emergency medical treatment and that Alacalay and McLin stopped CPR at one point to wait for or look for an AED. The propriety of Alacalay's and McLin's actions and decisions cannot be assessed at the motion to dismiss stage. Thus, at the pleadings stage, the allegations are sufficient to allege a deliberate indifference claim against Alacalay and McLin. At this stage of the proceedings, FCB has presented sufficient allegations to indicate possible deliberate indifference on the part of Defendants.

IV. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. Government officials are protected by qualified immunity "from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Viilo v. Eyre*, 547 F.3d 707, 709-10 (7th Cir. 2008)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity from civil liability the court must consider: (1) "whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a constitutional violation," and (2) "whether the violated right was clearly established," which "is determined by looking at whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008); *see also Akande v.*

*Grounds*, 2009 WL 291186, at *5 n.3 (7th Cir. 2009)(stating that in *Pearson v. Callahan,* ---U.S. ----, --- S.Ct. ----, 2009 WL 159429, *9 (Jan. 21, 2009), "[t]he Supreme Court has recently clarified that the *Saucier* sequence is not an inflexible requirement," but that "courts are still free to follow the *Saucier* protocol where, as here, it facilitates the expeditious disposition of a case").

Defendants contend that they are all entitled to qualified immunity. However, Defendants' argument is based upon nothing more than a conclusory assertion that they did not violate any of Johnson's constitutional rights. Defendants contend that "[t]heir actions do not rise to the level of deliberate indifference to a serious medical need, and they could not have been on notice that their actions violated any clearly established laws." (Mot. 11). Defendants improperly seek to delve into the merits of the claims brought against them at the pleadings stage. Defendants have not pointed to sufficient facts concerning the circumstances of the alleged constitutional deprivations to show that Defendants did not violate Johnson's constitutional rights or that such actions did not violate clearly established laws. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000)(indicating that the qualified immunity issue should be dealt with at the summary judgment stage rather than at the pleadings stage).

As indicated above, it is clearly established under the law that government officials are prohibited from being deliberately indifferent to a prisoner's serious medical needs. *Hayes*, 546 F.3d at 522. Defendants also argue again that Defendants, who are not medical professionals, should be given qualified immunity since they simply relied on advice from medical professionals. As indicated above,

FCB's claims are based upon more than merely the quality of the overall medical treatment Johnson received before her attempted suicide. Also, such facts are beyond the scope of the amended complaint and can be presented at the summary judgment stage.

We recognize that the Seventh Circuit has indicated that a court should resolve whether a defendant is entitled to qualified immunity as soon as practicable in litigation. *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008). However, the Seventh Circuit has also made it clear that there is not a "higher pleading standard . . . in a qualified immunity case," and that a court should defer making a qualified immunity determination if the court cannot make such a determination based on the limited record before it. *Id.* (stating that "[q]ualified immunity is the right to be free at the earliest point at which the court can be sure that the government official's conduct did not violate clearly established statutory or constitutional rights that any reasonable person would have known applied to the situation at hand"); *see also May*, 226 F.3d at 882 (indicating in regard to a motion to dismiss based on qualified immunity that required the court to "assess[] the strength and nature of [the Sheriff's] security concerns as well as the amount and kind of similarity in the situations of hospital detainees and jail detainees" that "[a]t the motion to dismiss stage, it is premature to make such factual assessments"). There is not sufficient evidence at this juncture to grant Defendants' request for qualified immunity. Therefore, we deny Defendants' request at this juncture for a dismissal based on qualified immunity.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' partial motion to dismiss the official capacity claim brought against Bargar, and we deny the remainder of the Defendants' partial motion to dismiss.

                                                          _____
                                                          Samuel Der-Yeghiayan
                                                          United States District Court Judge

Dated:   March 3, 2009